## BEN SCHUH v. STATE.

No. A-6788.  Opinion Filed September 14, 1929.
(280 Pac. 869.)

276

A. Lee Battenfield and C. F. Gowdy, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, and Anita Greer, were jointly charged with the murder of L. F. Greer. On motion of Anita Greer a severance was taken, and the state placed the defendant on trial first, which trial resulted in a verdict of guilty as charged in the information and fixed his punishment at imprisonment in the state penitentiary for life. Motion for new trial was filed, considered, and overruled, and exceptions duly saved. The court sentenced the defendant in accordance with the verdict of the jury to be confined in the state penitentiary for life. From the judgment of the court on the verdict the defendant appeals.

The testimony on behalf of the state, in substance, shows that L. F. Greer and his wife, Anita Greer, were in business at the town of Spavinaw, in Mayes county, Oklahoma, and that Ben Schuh, the defendant, had been working for the Greers for some time. The state presented its testimony on the theory that the defendant Schuh and Anita Greer, the wife of the deceased, had conspired to kill L. F. Greer, and in furtherance of that conspiracy L. F. Greer was killed by defendant and Anita Greer.

The testimony in this case tends to show that the defendant in this case and Anita Greer became infatuated

with each other; the defendant was often seen at the place of business of deceased, but for some time prior to the death of Greer the defendant had not been working for the Greers, but had been living in Spavinaw; that Anita Greer, in company with others, started to Tulsa, and defendant Schuh joined them a short distance from Spavinaw and made the trip with them; when they reached Tulsa, the defendant Schuh and Anita Greer left the other parties with the understanding that at a certain hour they would join them at a drug store in Tulsa. On another occasion, Anita Greer and Myrtle Miller made a trip to Tulsa, and the defendant joined them at Salina, which was on the road between Spavinaw and Tulsa, and went to Tulsa with them; on this occasion, on their arrival in Tulsa, Miss Miller joined a friend of hers, and the defendant and Anita Greer were left together with the understanding at a certain hour she would join the defendant and Mrs. Greer for the return trip; on the return trip, the defendant left the car at Salina and Anita Greer and Miss Miller returned to Spavinaw. Miss Miller states the reason for defendant Schuh joining them at Salina was that her mother and sister were in Spavinaw and going to Salina that day to catch a train for their home, and that Schuh went to Salina to join them in order that the mother and sister of Miss Miller would not know that Miss Miller was accompanying the defendant and Anita Greer to Tulsa.

The testimony of the state tends to show that, on Friday night prior to the Saturday evening the body of deceased was found in his home, Schuh was in the town of Spavinaw; that he went out in the afternoon fishing in a motorboat, and asked something about a hammer he owned which he kept in the boathouse where the defendant kept the motor. The testimony also tends to show

that the defendant and Mrs. Greer were together on Friday about the lunch hour, and on Friday evening defendant went to the place of business of the Greers and was there for some time. The defendant and Mrs. Greer were in the screened porch which joins the place of business and engaged in a conversation, and, as the hour for closing the place of business arrived, the employee of Greers was advised to close the store for the night, which was done. At the time the place of business was closed, the defendant and Mrs. Greer were on this porch at the rear of the business house and only a short distance from the house occupied by Mr. and Mrs. Greer.

The testimony further shows that the defendant Schuh had been occupying a room at the Case Hotel, and Friday afternoon he checked out and advised them he was going to leave the next morning for his home in Iowa. The proprietor of the Case Hotel, Dr. Case, states he heard defendant in the room he had been occupying some time during Friday night. It was further shown by the state that defendant Schuh was in the Bennett Restaurant Saturday morning about 5 o'clock; that later other parties joined him, and he was there for some time; he told the parties in the restaurant he was leaving that morning for his home in Iowa; later he went to the place of business of the Greers and asked one of the employees if Mrs. Greer was up, and they said they did not know, but the employee went and called Mrs. Greer, who came out and had a conversation with the defendant; that he bid goodby to Mrs. Greer and the parties in the place of business and a number of parties in the town of Spavinaw, and left the town of Spavinaw about 8 or 8:30 a. m., on Saturday, the day L. F. Greer was found in his room at night murdered.

The testimony further shows that about noon Saturday the defendant had some work done on his car in the town of Jay, in Delaware county; then some time in the evening the defendant is in Vinita, about 30 miles from Spavinaw; just what hour he arrived in Vinita no one seems to know; he bought a ticket from Vinita to his home town in Iowa, checked his trunk and put his car in a garage, then goes to the Grand Cafe and ordered something to eat; while defendant was eating his meal in the Grand Cafe, the state contends that a man by the name of Reamer, who was acquainted with the defendant, came in and asked defendant if he had come from Spavinaw, and he said he came from Joplin. Reamer himself was not called as a witness, but a witness who testified to this statement claims he had just walked into the Cafe and claims to have heard the conversation. Two other witnesses who were sitting on stools near Reamer, both of whom knew Reamer well, testified they did not hear what the conversation was.

The testimony further shows that the defendant remained in the city of Vinita until about 2 o'clock a. m., Sunday morning, when he took the train for his home town in Iowa; that from Kansas City he wrote some cards back to some people at Spavinaw.

The testimony of the state tends to show that prior to the defendant leaving Spavinaw there was an understanding between Mrs. Greer, Myrtle Miller, and the defendant, that the defendant would write Mrs. Greer and address his letters to Miss Miller, and when Miss Miller received the letters she would deliver them to Mrs. Greer. The state claims two letters were written by the defendant Schuh, from Varina, Iowa, to Mrs. Greer, addressed to Myrtle Miller, and were intercepted before they reached Mrs. Greer. These letters purported to have been written

from Iowa by the defendant, speak in endearing terms of love and contemplated marriage when Mrs. Greer has left her home and joined the defendant. As shown by the record, the last time the defendant was seen in the town of Spavinaw was about 8 or 8:30 o'clock a. m., Saturday before the body of the deceased, L. F. Greer, was found in his home when the fire was discovered on the bed where the body of the deceased was found.

The state offered some testimony tending to show that a hammer, similar to the one claimed to have been owned by the defendant, was found in the Greer home, but the hammer was not produced at the trial; the state being unable to account for the hammer after it was seen in the hands of one of the attorneys for the defendant Anita Greer. No testimony was offered by the state to show this defendant was in Spavinaw any time after his departure in the morning before the body of Greer was found in his house where the bed was on fire. The testimony shows that the fire was discovered about dark; statements of witnesses vary as to the exact time, but all fix the time around 7 o'clock; all admit that it was late enough that the lights were on in the business house and that the fire in the bedroom on the bed where the body was found caused a short in the electric wiring and the lights in the place of business of the Greers went out, and that Anita Greer, the wife of the deceased, was the one to discover the fire in their home.

In the production of the testimony against this defendant, the state sought to establish a conspiracy between the defendant and Anita Greer, the wife of the deceased, to kill the deceased.

It is not clear from the testimony on behalf of the state as to what time the state contends the blows that

took the life of L. F. Greer were administered, or what hour the deceased died. Dr. Case testified in his opinion that it might have been several hours after the blows were struck before the body was found. The undertaker and his helper, who went to Spavinaw to get the body and started to handle the body and put it in the undertaker's basket, stated the body was still limber and difficult to handle; that after they got the body to Vinita, which is a distance of about 30 miles, the body was still limber. The testimony of the undertaker further shows that, when they started to embalm the body and began drawing blood from the body, it was warm, and as it ran down the table it was warm enough to cause vapor to rise; that rigor mortis had just begun to set in, and that he would say the length of time Mr. Greer had been dead before examining the body about 1 o'clock Sunday morning was something like eight hours; that he based his statement upon the condition of the blood of the body; that rigor mortis begins to set in from three to eight hours after the death of a party.

Two physicians were called as witnesses for the defendant, who testified upon an examination of the body of the deceased they found a blister on the left ring finger about three-fourths of an inch long and about three-eighths of an inch wide containing fluid; that the condition of this blister indicated Greer was alive when the burning took place, at least there was circulation in the body at the time of the burning.

The foregoing is in substance the testimony offered by the state up to the time of the finding of the body, and in substance the testimony of the doctors and the undertakers that were called by the defendant to examine the body.

The theory of the state in this case is that the defendant, acting with Anita Greer, conspired to take the life of L. F. Greer, and that in furtherance of that conspiracy blows were administered to the deceased from the effects of which he died. During the trial the court permitted the state to prove, over the objections of the defendant, statements claimed by the witnesses to have been made by Anita Greer, the alleged coconspirator of the defendant in this case, in the absence of the defendant and after the death of L. F. Greer. The witnesses attempted to give statements of Anita Greer as to the cause of the death of the deceased, and as to the fact that he could not have shot himself, as there were no shells for the only gun on the place; as to the length of time since she visited the deceased in his room prior to the discovery of the fire, and various statements to Dr. Case; and as to the actions and emotions and grief of Anita Greer; and as to the general conduct of Anita Greer at the home where the body was found, and other statements as to whisky being found in the Greer home and as to where a hammer was in the house, and the request of Anita Greer with reference to how the windows of the house were to be closed and how they should be fastened. And further as to statements made by Anita Greer, in the absence of the defendant, as to where the deceased was on the Saturday afternoon prior to the discovery of the body in his home. All of these statements were objected to by the defendant, on the ground that they were inadmissible because they were made in the absence of the defendant and after the death of L. F. Greer.

The defendant in this case has assigned several errors alleged to have been committed by the trial court. We will first consider the second assignment, which is as follows:

"That severance was called for by the said Anita Greer and the same was by the court granted and the state elected to try Ben Schuh first. This trial was proceeded with on the 14th day of March, 1927, and the same day being a day of the regular term of this court. That during which term the state proceeded on the theory of conspiracy between the said Ben Schuh and Anita Greer to effect the death of the said Leonard Greer, and that the trial court allowed the introduction of evidence over the objections of Ben Schuh and allowed the state to show all the action of Anita Greer and everything she said and did immediately before and after the death of the said Leonard Greer, and permitted the state to introduce all declarations and statements of Anita Greer after the said Leonard Greer had been killed. That such evidence would be admissible only before the consummation of the act, and not afterwards."

This second assignment of error avers that the court erred in permitting the several witnesses to testify to statements made by Anita Greer, a codefendant, after the death of L. F. Greer, and in the absence of the defendant. It is urged by the defendant that the admission of the testimony complained of was prejudicial to his rights and deprived him of that fair and impartial trial guaranteed to him by the Constitution and laws of this state. A "conspiracy" is a combination between two or more parties to do a thing criminal or unlawful in itself. This conspiracy may be proven by facts and circumstances if sufficient, and when shown to have existed, that the statements and acts of the conspirators made and done in pursuance of the common design may be proven against the other in a prosecution against the others for the commission of the crime; but for such testimony to be admissible it must be proven, first, that a conspiracy actually existed, and the declarations made must be in pursuance of the common design, but nothing said or done by one

conspirator, in the absence of the one on trial after the crime has been accomplished, is admissible. Washmood v. U. S., 10 Okla. Cr. 254, 136 Pac. 184.

Underhill on Criminal Evidence (3d Ed.) § 709, p. 963, lays down the principle that acts declared by a conspirator cannot be admitted as against a coconspirator unless such acts were performed or such declarations made in aid or in execution of the conspiracy, so the acts or declarations must occur during the life of the combination, that is, after the formation of the corrupt agreement and before consummation or abandonment of the object of the conspiracy. 8 Cyc. 680.

In Wolfe v. State, 38 Okla. Cr. 412, 262 Pac. 505, this court, in the syllabus, said:

"Where two or more persons are jointly charged with the commission of a crime, and only one of them is put on trial, statements made by the codefendant after the termination of the conspiracy between the defendant and the codefendant, if any existed, in the absence of the defendant on trial are not admissible against the defendant; and where such statements are prejudicial, their admission is reversible error."

In this case there is no direct and positive testimony as to the conspiracy between the defendant and his coconspirator, Anita Greer, to take the life of L. F. Greer. The question to be considered by this court is: Does the mere fact that the defendant had worked for the deceased, and had gone back and forth to the city of Tulsa with Anita Greer, the wife of the deceased, in company with others, and that the defendant had been seen with Anita Greer at the place of business of the Greers, and in and near Spavinaw, and the writing of letters to Anita Greer after the defendant had gone to Iowa, establish a conspiracy?

The defendant in this case entered his plea of not guilty to the charge, which placed the burden upon the state to prove each and every material allegation in the information, and if the state failed to do so, the defendant had the right to stand upon his constitutional right and urge that the proof on behalf of the state was insufficient to sustain a conviction. The defendant did not have to attempt to explain how the deceased met his death. The defendant does not have to assume the burden of explaining, or attempting to explain, how the deceased met his death. The Attorney General in his brief says:

"There was no attempt on the part of the defendant to explain how Greer met his death, the only evidence introduced in defense of the charge was the testimony of two physicians to the effect that in their opinion the deceased must have been alive at the time his body was burned by the fire, which would have made the deceased alive on Saturday afternoon some nine or ten hours later than the time it is admitted that Schuh left Spavinaw."

The testimony shows that the defendant in this case left Spavinaw about 8 or 8:30 o'clock a. m., Saturday before the body of the deceased was found at 7 o'clock p. m., of said date. It is true the testimony of the two physicians called to testify on behalf of the defendant did state that in their opinion, at the time the blister was made on the ring finger of the hand of the deceased, the deceased was alive, or that there was circulation in his body.

We have set forth, in substance, the testimony of the witnesses who testified in the case with the view of trying to ascertain whether or not a conspiracy, as charged in the information, existed between the defendant and Anita Greer, his codefendant. There is no positive evidence of such a conspiracy, and if a conspiracy was shown to exist it was by circumstantial evidence. The condition

of this record is such that it is immaterial whether or not a conspiracy existed between the defendant and Anita Greer to take the life of L. F. Greer, for the reason that if a conspiracy existed it terminated on the death of L. F. Greer, and it was error for the court to admit, over the objection of the defendant, testimony of certain witnesses as to declarations and acts of Anita Greer which were not made in the presence of the defendant and after the death of L. F. Greer. The statements made thereafter by Anita Greer in the absence of the defendant were not binding on the defendant; they were not competent, and their admission was prejudicial to the rights of the defendant. The defendant was entitled to a verdict as to his guilt free from prejudice that might reasonably arise from the incompetent testimony referred to above.

The defendant has assigned other errors alleged to have been committed by the trial court, but, the view we take of this record, it is not deemed necessary to consider them. After reviewing all of the testimony carefully, we have come to the conclusion that the defendant did not have that fair and impartial trial to which he is entitled under the law, and are of the opinion this case should be reversed and remanded, and it is so ordered. The warden of the penitentiary is ordered to deliver the defendant to the sheriff of Mayes county, Oklahoma, to await further action of the district court of said county.

EDWARDS, P. J., and CHAPPELL, J., concur.